# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

================================ :

TOP FLIGHT TECHNOLOGIES, INC., : :
:
      **Plaintiff,** :
:
      **v.** :      **Civil Action No. _____**
:
TRUEDYNAMIC, LLC, and :
JAMES PLUNKETT, :
:
      **Defendant.** :
:
================================ :

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I.      INTRODUCTION

1.     The Plaintiff, Top Flight Technologies, Inc. (hereinafter "Top Flight" or the "Company"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendants, TrueDynamic, LLC (hereinafter "TrueDynamic") and James Plunkett (hereinafter "Plunkett")(collectively hereinafter the "Defendants") in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for damages arising from, and resulting from the Defendants' violations of the following:

     a)     breach of contract;

     b)     breach of implied covenant of good faith and fair dealing;

     c)     unjust enrichment;

     d)     tortious interference with contractual, advantageous and/or prospective business and economic relations;

-1-

     e)       fraud and deceit;

     f)       negligent misrepresentation; and/or

     g)      the Massachusetts Consumer Protection Act, M.G.L. c. 93, §§ 2 and 11.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendants' breaches, actions, omissions, policies, practices, and/or courses of conduct, Top Flight has suffered irreparable harm to its business and reputation in the drone industry, damages from the Defendants' coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that judgment be entered on all Counts against the Defendants and that Top Flight be awarded its compensatory damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, equitable and declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II.    PARTIES

4.      The Plaintiff, Top Flight Technologies, Inc., is a Delaware corporation with a principal place of business located at 730 Eastern Avenue, Suite 96, Malden, Massachusetts 02148.

5.      Upon information and belief, the Defendant, TrueDynamic, LLC, is a New Hampshire limited liability company, which is not in good standing, with a principal place of business located at 98 Franklin Street Extension, Suite 1, Derry, New Hampshire 03038.

6.      Upon information and belief, the Defendant, James Plunkett, is an individual residing in the State of New Hampshire.  Upon information and belief, Plunkett is the manager and member of the Defendant, TrueDynamic, LLC.

### III.   JURISDICTION AND VENUE

7.     The Plaintiff asserts that this Honorable Court has jurisdiction over this action under 28 U.S.C. § 1332 because the parties are of complete diversity and the amount in controversy exceeds $75,000.00.

8.     The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that such District is where the Defendants have routinely and generally conducted business, is where the Plaintiff is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.  Furthermore, the District of Massachusetts is where, pursuant to Section 10.2, the Services Agreement between and among TrueDynamic, LLC, James Plunkett and Top Flight Technologies, Inc., dated September 17, 2014 (hereinafter the "Agreement"), was executed, delivered and performed, and is where the breaches of such Agreement is alleged to have occurred.

9.     This Court has personal jurisdiction, generally and specifically, over the Defendants by express terms of the Agreement, and as arising from their extensive business contacts, generally over time and specifically in their business dealings with the Plaintiff, within the Commonwealth of Massachusetts.

### IV.   FACTUAL BACKGROUND

10.     Founded in 2014, Top Flight is a leading innovative provider of extended flight, enhanced payload, hybrid-propulsion, commercial unmanned aerial vehicles (hereinafter "UAV's" or "drones"), with its headquarters located in Malden, Massachusetts.  The Company has focused its growth on long-duration, high-payload UAV's, which has assumed an increasingly important space in the rapidly growing commercial UAV industry.  Still in its

startup phase, the Plaintiff is seeking to develop unique UAV solutions quickly and cost-effectively for a wide-range of commercial applications, such as security monitoring of a property for security, taking aerial shots of recreational or sporting events, delivering a package for a distributor, or providing humanitarian relief after a natural disaster.

11.     Partnered with MIT Lincoln Labs, Draper Laboratories and others, the Company's hybrid propulsion engine has an unparalleled record of over two and one-half (2.50) hours in flight on just one (1) gallon of gasoline. Ranked as one of the "Top Seven (7) Boston-Area Startups to Watch in 2016," the Company is working to establish itself as a leader in the commercial drone industry.

12.     In or about 2014, the Plaintiff sought to engage Defendants Plunkett and TrueDynamic for outsourced carbon fiber components and related services. After Top Flight described its needs, the Defendants agreed to perform in accordance with specific detailed work orders, with responsibilities to include design, integration, testing and development of the Company's alpha, beta and production UAV's and other products.  The Defendants represented that they had the skills, expertise and background to assume such responsibilities, in addition to being a preferred resource of carbon fiber components that would be appropriate for use and integration into the Plaintiff's products.  Plunkett and TrueDynamic offered to provide carbon fiber components, through such work orders, in a timely manner. The Company agreed to pay the Defendants' out-of-pocket costs and provide technical support and testing with all deliverables.

13.     Unfortunately, the representations of Plunkett and TrueDynamic were false and the Defendants fraudulently induced the Plaintiff to engage in business dealings, to Top Flight's detriment.

14.     On or about September 17, 2014, Top Flight and the Defendants executed a non-disclosure agreement (hereinafter "NDA"), in order to allow the parties to fully explore the Defendants' expertise and role in the development of the Company's UAV products.

15.     After extended discussions, the Plaintiff and the Defendants reached an agreement between and among Top Flight, TrueDynamic, LLC and James Plunkett, individually, effective as of September 17, 2014 (hereinafter the "Effective Date"). *See* Agreement (effective 9/17/14 & executed 6/5/15), attached, restated and incorporated by reference hereto as **Exhibit 1**).

16.     In **Exhibit A** to the Agreement, the Parties provided for the "Key Roles" and "Responsibilities" of Plunkett and TrueDynamic, as follows:

-       Work with the Company's CEO, engineers and other Top Flight resources in providing an engineering environment, material engineering and skills to design, build, integrate and test components necessary in developing alpha, beta and production UAV and other products;

-       Provide carbon fiber components, in a timely manner, at out-of-pocket cost until the Plaintiff completed an anticipated round of equity funding;

-       Participate in Company team discussions relating to product development and testing;

-       Participate in both alpha and beta product manufacturing support and testing;

-       Rate, report, suggest and document improvements that increased the quality and reliability of the Company's products;

-       Provide materials at cost through TrueDynamic, LLC;

-       Cooperatively negotiate, in good faith, and reach agreement with the Company on additional project(s), which were to include specific roles, deliverable, timelines and

budgets, to be memorialized in "Work Order(s)", as "completed and approved" by both the Company's CEO and Defendant Plunkett.

*See* **Exhibit 1** (Agreement), at p.10 (**Exhibit A**).

17.      Defendants Plunkett and TrueDynamic fraudulently never intended to comply with their "Key Roles" and "Responsibilities," as memorialized in the Agreement and as relied upon by the Company, and fraudulently induced the Plaintiff to enter into the contract, to Top Flight's detriment.

18.      Additionally, in or about November 2014 (and memorialized on or about June 5, 2015), the Plaintiff and the Defendants reached agreement as to the "Top Flight Technologies – Jim Plunkett Project Work Order No. 1."  *See* **Exhibit 1** (Agreement), at pp.12-13 (**Exhibit C**) (hereinafter "Work Order No. 1").

19.      Pursuant to Work Order No. 1, Defendants Plunkett and TrueDynamic agreed to the following "responsibilities:"

-        Work with Company personnel to design structural and airframe components suitable for use in UAV and Top Flight power unit development, including high-performance advanced composite components;

-        Fabricate components and help install, as appropriate;

-        Work with Company personnel to manage the development, design, testing, and deployment of Top Flight products in development, including high capacity (~ 100 lbs.) multirotor airframe and hybrid power generation unit;

-        Manage, lead and assist the Company team to "make as much progress as possible" through initial Test, Flight Mule, and Alpha project; and

-       Provide access to equipment and facilities necessary for producing advanced

composite parts, and assembly of product, as needed.

*See* id.

20.     Furthermore, by Work Order No. 1, the Defendants agreed to provide "Work

order deliverables", as follows:

-       Components to be determined on an ad-hoc / as needed basis with the team; and

-       [The] Goal was to develop and demonstrate a hybrid power plant and airframe

capable of flying at about 100 lbs. takeoff weight with foreseeable capability to handle 20

lbs. payload and 2+ hour flight time.

*See* id.

21.     Under Work Order No. 1, the Defendants agreed that the estimated start date of

the Work Order was December 1, 2014, and that the end date was May 3, 2015.  *See* id.

22.     The Parties also agreed to "specific time commitments to complete … Work

Order [No. 1] tasks", as follows:

-       Hybrid generator bench model with sufficient power capacity "tested demo-able"

in February 2015

-       High capacity airframe lifting 100 lbs. takeoff weight testing in early March 2015;

-       "Mule" airframe and hybrid generator built and flying in April 2015; and

-       General Alpha product design "well underway" in April 2015.

*See* id.

23.     The Plaintiff and the Defendants also agreed in Work Order No. 1 to a budget for

reimbursements and materials as to:  a) $1,150.00 - costs for carbon fiber cored panels (per pair

of "large panels," for a "pair fit within 30" x 50" mold"; b) less than $100.00 / month -- software

purchases; and c) for "[m]aterials required for ongoing production of advance composite structures (after existing stock … [was] exhausted…), including [a] minimum [of] single roll costs for 'prepreg' carbon fiber," at a cost of "~$3,500," and "FP Release Ply," at a cost of "~$1,250." *See* id. at pp.12-13.

24. Defendants Plunkett and TrueDynamic fraudulently never intended to comply with terms and conditions of Work Order No. 1 and fraudulently induced the Plaintiff to enter into the Work Order, to Top Flight's detriment.

25. In detrimental reliance upon the representations of the Defendants, Top Flight committed scarce money, engineering manpower and resources to the tasks assigned to Plunkett and TrueDynamic in order to complete Work Order No. 1, under the agreed-upon timeline. The Plaintiff assigned one of its engineers to work, on a full-time basis, with Defendant Plunkett, and provided full access to its other engineers and pilot resources. In addition to the payments detailed in Paragraph 26 below, the Plaintiff also purchased a carbon fiber fabricator for TrueDynamic, which Defendant Plunkett claimed was required to complete the assigned tasks.

26. Furthermore, despite its limited financial resources, the Plaintiff provided a series of payments to the Defendants, as follows:

| Date | Payee | Amount | Defendants' Description/Purpose |
|------|-------|--------|-------------------------------|
| 10/15/2014 | "Tru Dynamics" | $ 795.00 | Carbon Fiber Panels |
| 11/21/2014 | "Tru Dynamics" | $ 260.00 | Carbon Fiber Panels |
| 01/22/2015 | "Tru Dynamics" | $ 1,115.95 | Carbon Fiber Panels |
| 02/13/2015 | "Tru Dynamics" | $ 595.62 | |
| 04/06/2015 | "Tru Dynamics" | $16,771.00 | Project |
| 04/16/2015 | "Protolabs" | $ 1,025.27 | |
| 04/17/2015 | "Protolabs" | $ 3,175.29 | |
| 04/20/2015 | "Tru Dynamics" | $ 3,000.00 | Consulting |
| 05/19/2015 | "Tru Dynamics" | $ 2,542.25 | Out of Pocket Expenses |
| 06/08/2015 | "Tru Dynamics" | $ 3,000.00 | Consulting |
| 06/09/2015 | "Tru Dynamics" | $ 3,000.00 | Consulting |
| 09/14/2015 | "Tru Dynamics" | $ 1,984.66 | Out of Pocket Expenses |

+ _____

**TOTAL:          $37,265.04**

27.     Predictably, the Defendants utterly failed to perform in accordance with their obligations under the Agreement.  The hybrid generator bench model, with sufficient power capacity, was not able to be demo tested in February 2015, nor did weight testing occur in early March 2015 as to the high capacity airframe, with takeoff lift of 100 lbs.  The "mule" airframe and hybrid generator were not built and flying in April 2015, nor was the general alpha product design "well underway" at that time.

28.     In short, the Defendants breached and utterly failed to perform in accordance with their contractual obligations and the Company continued to suffer repeated delays in its UAV product development, with missed business and funding opportunities falling by the wayside. Top Flight suffered serious financial and reputational harm as a result of the misrepresentations, actions and omissions of Defendants TrueDynamic and Plunkett.

29.     Despite the repeated missed deadlines and the litany of excuses provided by Plunkett, in or about May and June 2015, the Company agreed to "supersede" Work Order No. 1 with a new set of terms and conditions, as memorialized in the "Top Flight Technologies – TrueDynamic / Jim Plunkett Project Work Order No. 2."  *See* **Exhibit 1** (Agreement), at pp.14-15 (**Exhibit C**) (hereinafter "Work Order No. 2").  The "Work Order Name" was entitled "TFT Prototype Development."  *See* id. at p.14.  Work Order No. 2 was executed by the Parties on or about June 5, 2015.

30.     Under the superseding Work Order, Defendants Plunkett and TrueDynamic agreed that "Work Order #2 include[d] all design, completed and in-progress work (labor, materials purchased for Work Order #1 and lessons-learned) to-date [sic] from December 1, 2014 on both the Hy3 (1.8kw UAV) and Hy4 (10kw UAV) efforts of both TFT and TrueDynamic personnel."  *See* id.

31.     In Work Order No. 2, the Defendants' "responsibilities include[d] project management, design, engineering, testing, CNC and Advanced Composite Fabrication, and Support services to complete two (2) 1.8 kw UAV (Hy3-A… and Hy3-B) in June 2015 with assistance" by the Company's personnel.  *See* id.

32.     The "Tasks and Deliverables" that were the responsibility of Plunkett and TrueDynamic included:

"1.     Defin[ition] [of] issues and execut[ion] [of] plans to address identified safety and reliability issues in the TFT Hy3 power and aircraft designs.

2.     Build[ing] a prototype Hy3 aircraft using updated 1.8 kw power plant, capable of flight tests and demonstrations, although not feature-complete.

3.     Based upon prototype Hy3 builds and initial flight tests, complet[ion] [of] the prototype design of the Hy3 1.8kw aircraft.

4.     Build[ing] and deliver[ing] the set of (2) Hy3 1.8 kw UAV's and spares kits."

*See* id.

33.     While the start date of Work Order No. 2 remained December 1, 2014, the Work Order set the end date as June 30, 2015.  *See* id.  The Defendants also agreed to "specific time commitments" to "complete the Work Order tasks" as delivering the "[s]et of (2) Hy3 1.8kw UAV's and spares kit by mid June 2015."  *See* id.

34.     The Parties agreed that software costs would remain at less than $100.00 / month and that all other materials and outside consultant costs had to be "pre-approved."  *See* id.

35.     Needless to say, the Defendants never intended to meet the terms and conditions, deadlines, or requirements of Work Order No. 2, any more than they had intended to meet the requirements of Work Order No. 1.  As set forth herein, Plunkett and TrueDynamic fraudulently induced the Plaintiff to enter into a further business arrangement with them, while never intending to comply with the terms and conditions thereof.

36.     In or about July 2015, Top Flight grew increasingly impatient with the missed deadlines and fictional excuses provided by Plunkett and TrueDynamic for its violations of the Agreement and Work Order No. 2.  Seeing the chickens were coming home to roost as to its fraud and deceit, the Defendants initiated a scheme to cover their tracks as to their non-performance by demanding execution by the Plaintiff of a false and fraudulent "Receipt and Acceptance."

37.     In order to heighten the duress, economic pressure and coerce execution of the fraudulent "Receipt and Acceptance," the Defendants proceeded to deny access of Top Flight

personnel to the Plaintiff's own property.  Demanding capitulation by the Plaintiff, Plunkett and TrueDynamic "locked" its building, prohibiting entry by Company engineers previously working at the Defendants' location, and thereby denied access to equipment and parts owned by Top Flight and required to move its development projects forward.

38.     The conduct of the Defendants shocked the conscience and maliciously and wantonly was intended to harm the business, prospects and reputation of Top Flight, and was perpetrated as unfair and deceptive trade practices and unfair and anti-competitive behavior, in violation of the Consumer Protection Act, Chapter 93A, Sections 2 and 11.

39.     Seeing its future prospects seriously damaged and concerned about corporate survivability, in or about July 2015, the Company revised the fraudulent "Receipt and Acceptance" to include the several pre-conditions:

> "Acceptance of these goods and services will take place in 2 phases – a) inspection / comments on parts – to be done within 5 business days of pick up, b) UAV #2 to be assembled and tested by the Top Flight team within 30 days of inspection of part.  Final acceptance of these goods and services shall occur on the later of thirty (30) calendar days after this receipt or upon TrueDynamic's delivery or remedies to deficiencies identified in this period.  TrueDynamic will provide reasonable advice and assistance as needed (e.g. related to fitting or trimming of parts), and may provide extended training, assembly services and/or repairs for TFT assembly errors or damage at regular shop arrangements and rates.  These items include:

WO#2 Item #4. Build and deliver the set of (2) Hy3 1.8kw UAV's and spares kit.

> This includes:
> -     New canopy for first 1.8KW aircraft
> -     New set of rotor arms for fist [sic] 1.8KW aircraft
> -     Complete airframe and composite components for second 1.8KW aircraft, including main panel, fuel tanks, feet, rotor ar5ms, canopy, engine mount plate, electronics mount plate, stand-off structural foam.
> -     Spare canopy, spare set of arms (both from partly from existing arms on first 1.8KW UAV)"

40.     With its coercion and duress succeeding, the Defendants accepted the Plaintiff's

conditions, thereby forcing the COO of Top Flight to execute the fraudulent "Receipt and Acceptance" on or about July 29, 2015.  The Defendants maliciously and wantonly intended to harm the business, prospects and reputation of Top Flight, continuing the unfair and deceptive trade practices and unfair and anti-competitive behavior, contrary to all standards and norms in the industry and in violation of the Consumer Protection Act, Chapter 93A, Sections 2 and 11.

41.     To date, the Defendants have continued their false and fraudulent conduct and have issued false invoices, demanding payment and compensation for work which they never performed in accordance with the Agreement, Work Order No. 1, or Work Order No. 2.

42.     Additionally, the goods and services provided by Plunkett and TrueDynamic ultimately were worthless and the Top Flight engineers have been forced to proceed in an entirely new direction in their UAV design, testing and development, forcing the Plaintiff to undergo yet additional delays and lost business opportunities.

43.     In sum and with malicious intent, the Defendants have committed unfair and deceptive trade acts and practices and anti-competitive courses of conduct against the Plaintiff. Plunkett and TrueDynamic have breached the Agreement and Work Orders with Top Flight, and have caused significant damage to the Company in the highly competitive UAV industry.  The Defendants have made misrepresentations and omissions of material facts, which the Plaintiff relied upon, to its detriment.  The Defendants perpetrated a fraud and deceit upon the Company, which suffered as a consequence.  The actions, omissions, and courses of conduct of the Defendants have thereby caused the Plaintiff to suffer further damages, lost profits, lost business opportunities, out-of-pocket losses, development delays, and injuries, and forcing it to incur costs and attorneys' fees to recover the damages which it has incurred.

## V. <u>VIOLATIONS OF LAW</u>

## <u>COUNT I – BREACH OF CONTRACT</u>

44.     The Plaintiff reasserts Paragraphs 1 through 43 of the Complaint, together with Exhibit(s), and restates and incorporates them herein by reference.

45.     The Defendants and the Plaintiff entered into a valid and binding contract as to the design, building, integration, testing and development of unmanned aerial vehicles, and with a series of deliverables to be provided in accordance with the Agreement, and Work Order Nos. 1 and 2.

46.     In detrimental reliance upon the Agreements and Work Orders between the Parties, the Plaintiff provided with engineers, manpower, technology, equipment and access to its confidential and proprietary information and trade secrets, and sought to pursue a relationship for the development of proprietary UAV products and related transactions and engaged in other actions and courses of conduct to perform in reliance on the Agreement.

47.     The Plaintiff performed its obligations under the Agreement, and with good faith.

48.     The Defendants, by their conduct described herein, breached its Agreement and the Work Orders with the Plaintiff.

49.     As a direct and proximate cause of the Defendants' breaches of the Agreement and Work Orders, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries, and losses, to its detriment.

## COUNT II – BREACHES OF IMPLIED
## <u>COVENANT OF GOOD FAITH AND FAIR DEALING</u>

50.     The Plaintiff reasserts Paragraphs 1 through 49 of the Complaint, together with the Exhibit(s), and restates and incorporates them herein by reference.

51.     A covenant of good faith and fair dealing was implied and existed in the Agreement and the Work Orders and in the business relationship between the Parties.

52.     The Defendants had a duty of good faith and fair dealing in their dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it to enter into the contract and share confidential and proprietary information with the Defendants.

53.     By the Defendants' illegal conduct and harm to its business, the Plaintiff has suffered irreparable harm, and will continue to suffer irreparable harm, together with lost business opportunities, relationships, and potential sources of revenue and profits as a direct and indirect consequence of its information sharing with the Defendants.

54.     Under the covenant, the Defendants were obligated to good faith perform of their obligations under the Agreement and the Work Orders with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

55.     As described above, the Defendants breached the implied covenant of good faith and fair dealing with the Plaintiff.

56.     As a direct and proximate cause of the Defendants' breaches of the implied covenant of good faith and fair dealing, the Plaintiff has irreparable harm, and suffered general, special, and consequential damages, including, but not limited to, loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries, and losses, to its detriment.

## COUNT III – UNJUST ENRICHMENT

57.     The Plaintiff reasserts Paragraphs 1 through 56 of the Complaint, together with the Exhibit(s), and restates and incorporates them herein by reference.

58.     The Defendants illegally received and demanded compensation and benefits from the Plaintiff, as arising from their false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

59.     The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

60.     The Defendants have been unjustly enriched by their actions, as described herein.

61.     As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiff has irreparable harm, and suffered general, special, and consequential damages, including, but not limited to, loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries, and losses, to its detriment.

## COUNT IV – INTERFERENCE WITH CONTRACTUAL, ADVANTAGEOUS AND/OR PROSPECTIVE BUSINESS AND ECONOMIC RELATIONS

62     The Plaintiff reasserts Paragraphs 1 through 61 of the Complaint, together with the Exhibit(s),  and restates and incorporates them herein by reference.

63.     At all times relevant herein, the Plaintiff has had past, current and prospective advantageous business, contractual and economic relations with potential and current customers, investors, partners, and participants in the UAV industry.

64.     The Plaintiff has sought and attempted to maintain such past, current and prospective advantageous business, contractual and economic relations with such parties and third-parties and to create and generate new contracts with such individuals and entities.

65.     At all times relevant herein, the Defendants have tortiously interfered with the business relationships and contracts of the Plaintiff and have harmed the Company's funding prospects, business and customer relationships, and damaged its reputation, thereby causing the circumstances such that the parties and/or third-parties were to discontinue and/or reduce their business dealings with the Plaintiff and limit or refrain, and/or prospectively limit or refrain, from business relationships with it in the future.

66.     The Defendants have refused and/or failed to correct or cure their acts, omissions, practices, and/or courses of conduct in any manner whatsoever.

67.     As a direct and proximate cause of the Defendants' tortious interference with advantageous business, contractual and/or prospective business and economic relations, the Plaintiff has suffered irreparable harm and general, special and consequential damages, including but not limited to loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries and losses, to its detriment.

## COUNT V  - FRAUD AND DECEIT

68.     The Plaintiff reasserts Paragraphs 1 through 67 of the Complaint, together with the Exhibit(s), and restates and incorporates them herein by reference.

69.     The actions of the Defendants described herein constitute fraud and deceit, including but not limited to the following:

a)      the Defendants made numerous misrepresentations and/or omissions of material fact to the Plaintiff, knowingly or with reckless disregard as to whether they were true or false;

b)      the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

-17-

c)     the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

70.    As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiff has suffered irreparable harm and general, special and consequential damages, including but not limited to loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries and losses, to its detriment.

## COUNT VI - NEGLIGENT MISREPRESENTATION

71.    The Plaintiff reasserts Paragraphs 1 through 70 of the Complaint, together with Exhibit(s), and restates and incorporates them herein by reference.

72.    The conduct of the Defendants as described herein constitutes negligent misrepresentation in that the Defendants negligently provided the Plaintiff with erroneous and misleading information, which it relied upon, to its detriment.

73.    As a direct and proximate cause of the Defendants' negligent misrepresentations, the Plaintiff has suffered irreparable harm and general, special and consequential damages, including but not limited to loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries and losses, to its detriment.

## COUNT VII - VIOLATIONS OF MASSACHUSETTS CONSUMER PROTECTION ACT / M.G.L. C. 93A

74.    The Plaintiff reasserts Paragraphs 1 through 73 of the Complaint, together with the Exhibit(s), and restates and incorporates them herein by reference.

75.    At all relevant times herein, the Defendants conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

76.     The conduct of the Defendants as described herein, constitutes unfair and deceptive and anti-competitive trade practices, under Sections 2 and 11 of the Consumer Protection Act, in that the Defendants:

a.      Falsely entered into the Agreement and Work Orders Nos. 1 and 2 without any intention of performing the same;

b.      Perpetrated a fraud and deceit, seeking and attempting to cause, willfully, maliciously, and/or recklessly, the harm to the Plaintiff, its business relationships, and its reputation;

c.      Fraudulently induced the Plaintiff to rely, to its detriment, on the business relationship with the Defendants, believing that the design, building, integration, testing and development of its UAV's and other products was being carried out in accordance with the Agreement and Work Orders Nos. 1 and 2, and in accordance with the standards of the industry, and to irreparably harm the Plaintiff;

d.      Induced the Plaintiff to enter into the Agreement and Works Orders Nos. 1 and 2 with the Defendants, thereby foregoing other business opportunities;

e.      Misused its position in the marketplace, employing coercion and duress, and exerted its greater economic power by unfair and deceptive trade practices, and by unfair and anti-competitive conduct;

f.      Refused to honor the Agreement and Work Orders Nos. 1 and 2; and/or

g.      Provided the Plaintiff with false and misleading information, which it relied upon to its detriment.

77.     The false statements were made in breach of the Defendants' duty to exercise due care to reasonably determine that the statements made were true and accurate at the time they were made to the Plaintiff regarding its dealings with Plunkett and TrueDynamic.

78.     As a direct and proximate cause of the Defendants' violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has irreparable harm, and suffered general, special, and consequential damages, including, but not limited to, loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries, and losses, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Top Flight Technologies, Inc., respectfully requests that this Honorable Court grant it the following relief:

a)      Order and enjoin, temporarily, preliminarily, and permanently, the Defendants, James Plunkett and TrueDynamic, LLC;

b)      Determine that the Defendants, James Plunkett and TrueDynamic, LLC, are liable, and for all damages, losses, and costs, as alleged herein;

c)      Determine and award the Plaintiff, Top Flight Technologies, Inc., the actual losses sustained by it as a result of the violations of law by the Defendants, James Plunkett and TrueDynamic, LLC, as set forth herein;

d)      Render a judgment and decision on behalf of the Plaintiff, Top Flight Technologies, Inc., on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants, James Plunkett and TrueDynamic, LLC, are liable, in all respects;

e)      Order, decide, adjudge, and determine that the liability of the Defendants, James Plunkett and TrueDynamic, LLC, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

f)      Award the Plaintiff, Top Flight Technologies, Inc., its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

g)      Award the Plaintiff, Top Flight Technologies, Inc., its actual attorneys' fees, for being required to prosecute this action;

h)      Award the Plaintiff, Top Flight Technologies, Inc., multiple, double, treble, and/or punitive damages in an amount to be determined;

i)      Enter judgment on behalf of the Plaintiff, Top Flight Technologies, Inc., on the Complaint;

j)      Order declaratory relief, as appropriate and as this Honorable Court deems necessary; and/or

k)      Any additional relief which this Honorable Court deems just and proper.


**THE PLAINTIFF, TOP FLIGHT TECHNOLOGIES, INC.,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**


Respectfully Submitted,
PLAINTIFF, Top Flight Technologies, Inc.,

By its Attorneys,


_/s/  Philip M. Giordano_
Philip M. Giordano, Esq. (BBO No. 193530)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
pgiordano@reedgiordano.com

Dated:  March 4, 2016